IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Brief August 15, 2006

## FARIS ADB AL-ALI V. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court of Rutherford County
No F-56066   James K. Clayton, Jr., Judge**

_____

**M2006-00144-CCA-R3-PC - Filed December 13, 2006**

_____

Petitioner, Faris Adb Al-Ali, was convicted by a Rutherford County jury of rape of a child and received a twenty-two year sentence. The conviction and sentence were affirmed on direct appeal. Petitioner timely filed his pro se post-conviction petition. Following the appointment of counsel and filing of an amended petition, the post-conviction court conducted an evidentiary hearing on the petition. On December 1, 2005, the post-conviction court entered an order dismissing the petition. Petitioner appealed. We affirm the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Circuit Court is Affirmed**

J. S. DANIEL, SR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., and ALAN E. GLENN, J., joined.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General, William Whitesell, District Attorney General; Laural A. Nutt, Assistant District Attorney General, for Respondent, State of Tennessee.

Adam T. Dodd, Murfreesboro, Tennessee, Attorney for the Petitioner, Faris Abd Al-Ali.

# OPINION

## BACKGROUND

The Petitioner, Faris Abd Al-Ali, was charged in October 2001 with rape of a child. Following a jury trial in October 2002, the petitioner was found guilty and sentenced to twenty-two years. On direct appeal, the conviction and sentence were affirmed. See State v. Faris Abd Al-Ali, No. M2003-00662-CCA-R3-CD, 2004 WL 840082 (Tenn. Crim. App. filed Apr. 16, 2004 at Nashville).

On August 2, 2004, petitioner filed his pro se petition for post conviction relief. Following the appointment of counsel, the petitioner filed an amended post-conviction petition. The post-conviction court conducted a bifurcated evidentiary hearing on August 30 and November 28, 2005. Petitioner and trial counsel testified at the hearing.

At the evidentiary hearing, petitioner acknowledged he was charged with rape of a child in October 2001. He said an assistant public defender represented him at the trial which resulted in a guilty verdict, and at the sentencing hearing where a twenty-two year sentence was imposed. Petitioner said the public defender also represented him on appeal.[1]

Petitioner was shown a copy of his pro se post-conviction petition. He identified the petition and confirmed the issues he raised in his petition. Among his claims, he maintained that trial counsel only met with him three times over the course of the year from indictment to trial for a total of three to four hours. He added that trial counsel lacked familiarity with the case and failed to investigate it properly.

Specifically, he argued trial counsel failed to call two witnesses – his wife Lisa and Detective Peach. Even though he admitted counsel called his wife, he was disturbed that counsel only asked one question of her. Petitioner wanted the jury to hear that his wife felt petitioner was a very controlling man. Petitioner wanted to call Detective Peach as a witness to show that even though the detective was with him for over five hours, petitioner never gave him a statement. Petitioner said the detective also would have supported his claim that he did not read or write in English.

Petitioner testified that when he returned to Rutherford County, he was questioned by Detective Liehr. He said the detective not only questioned him about the instant charges but also asked him about the September 11, 2001, incident in New York City. He told the detective he had nothing to do with those events. When questioned about a written statement taken by Detective Liehr, petitioner said he told him he did not want to give a written statement but that the detective "begged" him to do so. He claimed the detective wrote incorrect information into the prepared statement and that Detective Liehr lied about his statement. Petitioner said he was asked to place his signature at the top of the statement. As a result, petitioner claimed the detective or someone else filled in the balance of the statement at a later time. He insisted the statement was not his own and that it was taken against his will.

Next, petitioner complained about references to his nationality made during individual juror questioning. He said jurors were told individually that he was an Iraqi national. Petitioner said he considered himself an American and that it was unnecessary to mention his nationality. He said due to the events of September 11, 2001, he was not considered by the general public to be an American. Petitioner said his only post-trial meeting with trial counsel was at the sentencing hearing. He

___

[1] According to petitioner, the assistant public defender was appointed to represent petitioner. When petitioner's family sought to hire private counsel, the public defender was released. However, when the family could not secure adequate funds, the public defender was re-appointed to represent petitioner.

insisted he never met with counsel during preparation of the appeal.

On cross-examination, petitioner admitted he had a Muslim or Arab name and appearance. He also acknowledged the current anti-Arabic sentiment. He reiterated his argument that he did not make the statement taken by the detective because he did not speak English. He also confirmed he had wanted his wife to testify at trial that he was Muslim and a controlling man. Petitioner said he wanted his counsel to ask questions of his wife so the jury could see her dislike of him.

Next, the assistant district attorney recited portions of the suppression hearing testimony of Detective Peach. In the earlier testimony, the detective said he was with petitioner for approximately five hours during the trip back to Rutherford County, and during that time neither he nor other individuals had difficulty communicating with petitioner. He added that petitioner never indicated he was having any difficulty understanding English and never requested an interpreter.

Petitioner said his children speak English and Arabic even though a trial reference indicated petitioner had said the children only speak English. He said the reference likely was to his step-children who speak English.

Trial counsel testified that he was employed by the public defender's office and was appointed to represent petitioner. He said he and petitioner met several times prior to trial. Although he could not quantify the precise number of hours, counsel said he spent a lot of time on the case due to his concerns surrounding the events of September 11, 2001, and the petitioner's Arabic descent. He feared these additional factors might inhibit petitioner's ability to have a fair trial.

Counsel said an interpreter, Mr. Kayatt, accompanied him during visits with petitioner. He noted that petitioner would spend most of the session conversing with the interpreter. He believed the interpreter provided comfort to petitioner because could speak petitioner's native tongue.

Counsel said he wanted to be sure the September 11, 2001, incident did not influence or otherwise become a factor in petitioner's trial. Counsel filed motions *in limine* to prevent unnecessary references to nationality and also participated in individual voir dire in the judge's chambers. A few potential jurors indicated they had problems sitting on the jury due to the Arabic sentiment at that time. Those jurors were immediately dismissed for cause. Counsel read portions of the trial transcript which revealed some jurors were asked if they would have a problem serving as a juror if petitioner was an Iraqi national. Those jurors who remained in the jury pool expressed their ability to be fair and impartial. The jury was also instructed by the trial court that the petitioner was in the United States legally.

Counsel said he also challenged the admissibility of petitioner's statement given to the detective because of the language barrier through a motion to suppress. He argued that the petitioner did not sufficiently understand English to be able to knowingly waive his rights and to give a statement. The challenge not only touched upon the language barrier but also upon the issue of petitioner's signature being placed at the top of the statement rather than at the bottom of the statement as is traditional. Further, counsel was concerned that a large portion of the statement was

3

written in Detective Liehr's handwriting. Counsel acknowledged, however, that the trial court denied the suppression motion.

Trial counsel said he felt no need to hire an expert to examine petitioner's understanding of the English language. He felt petitioner, who had been in the United States for some time, had been employed in various capacities and had children, had a working knowledge of the English language.

Counsel recalled that Afghanistan was the first country attacked following September 11, but he wanted to be sure the jury did not allow the anti-Arabic sentiment to deprive petitioner of a fair trial. He had hoped to show the jury that petitioner had fought for the United States in the Gulf War; however, when petitioner decided not to testify, the opportunity never presented itself.

## DISCUSSION

In this appeal, petitioner claims the trial court erred in dismissing his petition for post-conviction relief. He specifically claims trial counsel failed to fully and adequately inquire into proof of petitioner's ability to acknowledge and voluntarily waive his Fifth Amendment privilege against self-incrimination because of his limited understanding of the English language. Next, he contends he was denied his Fifth Amendment right to a fair and impartial jury due to trial counsel's failure to object to the jury being informed that petitioner was an Iraqi citizen.

### *Burden of Proof*

Tennessee Code Annotated section 40-30-103 (2003) provides that in order for a petitioner to obtain post-conviction relief, the petitioner must show that his or her conviction or sentence is void or voidable because of the abridgement of a constitutional right. The petitioner bears the burden of proving the factual allegations in the Petition for Post-Conviction Relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusion drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, it is the burden of the petitioner to show that the evidence preponderates against the lower court's findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below the "range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure
> to prove deficiency or prejudice provides a sufficient basis to deny
> relief on the ineffective assistance claim. Indeed, a court need not

4

> address the components in any particular order or even address both
> if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

To establish prejudice or the second prong of the Strickland analysis, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland 466 U.S. at 687-88, 692, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). When reviewing a defense attorney's actions, this Court may not use hindsight to second-guess counsel's decisions regarding trial strategy and tactics.

Here, the petitioner's first claim is that trial counsel was ineffective for failing to adequately inquire into proof of petitioner's ability to acknowledge and voluntarily waive his Fifth Amendment privilege against self-incrimination. As evidenced in the record, petitioner gave a statement to Detective Liehr. Although the statement was primarily written by the detective, the petitioner signed the statement at the top. Trial counsel testified that he challenged the statement and waiver rights form in a suppression motion and subsequent suppression hearing. Counsel attacked the statement based on petitioner's inability to waive his Fifth Amendment privilege and also inquired into the unusual request by the detective that petitioner place his signature at the top of the statement.

On direct appeal, petitioner challenged the trial court's denial of his suppression motion based on his claim that his statement was not knowing and intelligent because of his inadequate grasp of the English language. This Court specifically addressed the "knowing and voluntary" issue and referenced petitioner's claim that he did not speak English. This Court upheld the trial court's denial of the suppression motion and concluded that petitioner had sufficient understanding of the English language.

Therefore, this issue has essentially been previously determined. As such, petitioner would not be entitled to relief under the post-conviction statute. However, even if we expand our review of this issue to include counsel's action or inaction relating to petitioner's ability to knowingly and intelligently waive his Fifth Amendment privilege we reach the same result. Trial counsel testified about the suppression motion and his concern with the statement. Counsel admitted he did not call an expert to inquire fully into petitioner's understanding of English. Counsel added that he did not believe such an expert would have been beneficial in this case. This Court notes that no such expert was presented at the post-conviction hearing.

5

Having reviewed the record, including evidence of petitioner's social interaction and general employment history, we find that counsel adequately protected petitioner's rights and conducted an adequate inquiry into petitioner's ability to understand English. Having filed the motion to suppress and securing the services of an Arabic interpreter, we find no deficiency in counsel's performance. This issue is without merit.

In his final issue, petitioner maintains counsel was ineffective for failing to object to the jury being informed that he was an Iraqi citizen. Petitioner adds that this failure resulted in a denial of his Fifth Amendment right to a fair and impartial jury. Without question, the court and counsel expressed concern about the petitioner's nationality. As indicated throughout the record, the parties openly discussed the September 11, 2001, terrorist incident in New York City and D.C. and the perceived anti-Arabic sentiment in America. Petitioner testified that he is from Iraq but considers himself an American. He admitted that his name sounds Arabic. However, counsel was concerned from the beginning of his representation that petitioner's Iraqi (or Arabic) nationality might impede his ability to receive a fair trial.

Counsel expressed these concerns in a motion *in limine* but also addressed the issue openly with the trial court. The trial court recognized the concern and took steps to ensure that the jury eventually empaneled would not be predisposed to finding guilt simply due to petitioner's nationality. To that end, the trial court conducted individual voir dire of the jurors on the issue. Potential jurors were questioned about their sentiments following September 11 and were asked whether they could be fair and impartial. Some potential jurors indicated they could not be fair and that the petitioner's Iraqi connection could or would affect their decision. Those jurors were excused for cause.

Based on excerpts in the record, other jurors were informed that petitioner was an Iraqi national. Again, these questions were posed in an attempt to uncover bias or prejudice on the part of any potential juror. Those jurors who indicated they would not be influenced by petitioner's nationality were permitted to stay in the potential jury pool. The record also indicates the trial court informed the chosen jury that petitioner was in this country legally.

Petitioner now claims counsel erred in failing to object to the jury being informed he was an Iraqi national. We disagree. Counsel made it clear that he was concerned about the Arabic connection in light of September 11. He stated that he was aware of the issues and wanted to be sure petitioner received a fair and impartial trial. Rather than ignoring the issue, counsel brought the matter before the trial court. The trial court took precautions to address the issue. These safeguards were reasonable under the circumstances. Nothing in the record indicates the jurors could not be fair and impartial. In fact, the individual questioning gave the petitioner the unique opportunity to inquire specifically into the nationality issue.

This Court finds that counsel took extraordinary steps to ensure his client received a fair trial by fair and impartial jurors. Therefore, we find this claim is without merit.

In post-conviction proceedings, the petitioner must prove the allegations by clear and

convincing evidence. Here, he has failed to so do.  Accordingly, the judgment of the post-conviction court is hereby affirmed.

 

_____

J. S. Daniel, Senior Judge